NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0869n.06

No. 09-2532

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Dec 21, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| JOSHUA DEATRICK | ) | |
| | ) | ON APPEAL FROM THE |
| *Petitioner-Appellant,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| JERI-ANN SHERRY, WARDEN | ) | O P I N I O N |
| | ) | |
| *Respondent-Appellee.* | ) | |

BEFORE:     BATCHELDER, Chief Judge; COLE and COOK, Circuit Judges.

COLE, Circuit Judge. Petitioner-Appellant Joshua Deatrick appeals the denial of his petition for a writ of habeas corpus. Deatrick argues that his sentence pursuant to the Michigan sentencing scheme is unconstitutional because the state trial court found facts that increased his minimum sentence, in violation of the *Apprendi/Blakely/Booker* line of cases. Deatrick further argues that this Court must reconsider previous panel decisions upholding the Michigan sentencing scheme in light of the Supreme Court decisions *United States v. O'Brien* and *Cunningham v. California*, *infra*.

We AFFIRM.

I.

In October 2003, Petitioner-Appellant Joshua Deatrick committed at least three armed robberies of gas stations. In all three cases, Deatrick entered the gas station on a pretext, brandished and threatened the clerk with a knife, and took money from the cash register. On January 28, 2004,

Deatrick pleaded guilty to three counts of armed robbery in Kent County Circuit Court (Michigan), in return for an agreement by the government not to bring charges on other robberies he was alleged to have committed, as well as an agreement that he would not be charged as a habitual offender. Other than the agreement with regard to the habitual offender classification, Deatrick did not receive any special sentence consideration in return for his plea.

On March 15, 2004, Deatrick was sentenced to three terms of fourteen to forty years in prison, to be served concurrently. The minimum sentence of 168 months, while at the upper end of the range, was consistent with the guidelines calculation under Michigan law. In choosing to set the minimum sentence at the high end of the range, the trial court referenced the fact that at least one of the gas station attendants suffered lacerations as a result of Deatrick's conduct.

Deatrick filed an application for review with the Michigan Court of Appeals, arguing that his sentence was improperly enhanced by judicial fact-finding that was not proven beyond a reasonable doubt, in violation of *Blakely v. Washington*, 542 U.S. 296 (2004). The Michigan Court of Appeals denied the application in a summary order, as did the Michigan Supreme Court.

Deatrick filed this petition for a writ of habeas corpus on December 26, 2006, again asserting that the Michigan statutory scheme is unconstitutional. The magistrate judge recommended denying Deatrick's petition and not granting a certificate of appealability. The district court adopted the report in full after a timely objection from Deatrick. This Court granted a certificate of appealability on two issues: (1) whether the holding in *Cunningham v. California* is implicated by Michigan's sentencing scheme, and (2) whether Michigan's sentencing scheme is unconstitutional under *United States v. Booker*.

II.

Under the Michigan sentencing scheme, a particular criminal offense carries with it a statutory maximum penalty set by the legislature. In this case, the statutory penalty for armed robbery is life in prison or any term of years. MICH. COMP. LAWS 750.529 (2011). The sentencing court then calculates a minumum sentence through a guidelines-based calculation that takes into account various offense and criminal history factors. This guideline system is similar in nature to the guidelines used in the federal system, though the specific method of calculating the sentence and the factors considered are different. With these two numbers in mind, the trial judge then imposes an indeterminate sentence, the upper bounds of which can be no greater than the statutory maximum and the lower bound no less than the guidelines calculation. MICH. COMP. LAWS § 769.8(1) (2011); *see also People v. Drohan*, 715 N.W.2d 778, 789-90 (Mich. 2006) (explaining the Michigan sentencing scheme).

We have twice before considered the constitutionality of Michigan's sentencing scheme. *See Montes v. Trombley*, 599 F.3d 490 (6th Cir. 2010); *Chontos v. Berghuis*, 585 F.3d 1000 (6th Cir. 2009). Both cases are virtually identical in their facts to Deatrick's case. In both cases, the defendant was convicted of or pleaded guilty to offenses that carried a statutory maximum penalty of life or any terms of years. *Montes*, 599 F.3d at 493; *Chontos*, 585 F.3d at 1001. In both cases, the state trial court imposed an indeterminate sentence that was between the guideline calculation and the statutory maximum. *Montes*, 599 F.3d at 493; *Chontos*, 585 F.3d at 1001. In both cases, the petitioners argued that judicial fact-finding raising the minimum sentence violated the *Apprendi/Blakely* line of cases. As this Court succinctly explained in *Chontos*:

> *Apprendi v. New Jersey*'s Sixth Amendment rule requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." The Supreme Court in *Blakely v. Washington* explained that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Under these cases, judicial factfinding may not increase the maximum penalty beyond that to which the jury's verdict alone exposes the defendant.

*Chontos*, 585 F.3d at 1001-02 (emphasis removed) (citations omitted). In both cases, this Court held that the *Apprendi/Blakely* line of cases is not implicated by Michigan's statutory scheme because judicial fact-finding increases the minimum sentence, rather than the maximum sentence. *Montes*, 599 F.3d at 496; *Chontos*, 585 F.3d at 1001. "The Sixth Amendment jury trial right simply ensure[s] that the defendant will never get *more* punishment than he bargained for when he did the crime; it does not promise that he will receive anything less than that." *Chontos*, 585 F.3d at 1002 (quoting *Harris v. United States*, 536 U.S. 545, 566 (2002) (emphasis in quote) (internal quotations omitted)).

A published panel decision of this Court is binding on future panels considering the same issue. *Sykes v. Anderson*, 625 F.3d 294, 319 (6th Cir. 2010). The exception to this rule is where "an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Id*. Thus, Deatrick's argument that the *Apprendi/Blakely* analysis applies to the Michigan sentencing scheme is foreclosed by *Chontos* and *Montes* unless he can show that those decisions are inconsistent with Supreme Court case law. We find that he cannot make this showing.

A.

Deatrick argues that the Supreme Court in *United States v. O'Brien*, 130 S. Ct. 2169 (2010), undermines our holdings in *Montes* and *Chontos*. *O'Brien* deals with a sentence under 18 U.S.C. § 924(c)(1), which prohibits using a firearm in furtherance of a crime of violence. 130 S. Ct. at 2172. Section 924(c)(1)(A)(i) carries a five year minimum mandatory sentence; however, § 924(c)(1)(B)(ii) carries a 30 year minimum mandatory sentence if the firearm in question is a machine gun. *O'Brien*, 130 S. Ct. at 2172. The *O'Brien* Court, citing to a previous case intepreting a prior version of § 924, held that the machine gun enhancement must be proven beyond a reasonable doubt. *Id.* at 2180 (discussing *Castillo v. United States*, 530 U.S. 120 (2000), which intepreted the prior version of § 924).

Deatrick argues that this result is irreconcilable with *Harris v. United States*. *Harris*, interpreting the current version of § 924, held that a provision that raises the minimum mandatory sentence if a defendant brandishes a firearm was a sentencing factor that did not have to be proven beyond a reasonable doubt. *Harris*, 536 U.S. at 552-54. *Harris* draws a bright-line distinction between judicial fact-finding that raises the sentence beyond the stautory maximum, which is prohibited under *Apprendi/Blakely*, and judicial fact-finding that raises a minimum mandatory sentence, which does not violate the Sixth Amendment. *Id.* at 566-67. Deatrick argues that *O'Brien* overturns this bright-line rule and requires all sentencing elements to be proven beyond a reasonable doubt. As the judicial fact-finding at issue in the Michigan scheme involves the minimum sentence, both *Montes* and *Chontos* rely on *Harris* in concluding that there is no *Apprendi/Blakely* problem

with the Michigan scheme. If *Harris* is no longer good law, then Deatrick is correct that *Montes* and *Chontos* must be reconsidered.

Justice Stevens does argue in his concurrence in *O'Brien* that *Harris* was wrongly decided and that *Apprendi/Blakely* should apply with equal force to any minimum mandatory sentence. *O'Brien*, 130 S. Ct. at 2182-2183 (Stevens, J., concurring in the judgment). But only Justice Thomas endorsed this view. The fact that the other Justices did not join Justices Stevens and Thomas means that *Harris* is still good law and that opinions which rely on its rationale are still valid.

Instead, the majority limits the holding in *O'Brien* to the specific statutory provisions contained in § 924, as it holds that *Castillo* still controlled on the question of whether the machine gun enhancement needed to be proven beyond a reasonable doubt. *O'Brien*, 130 S. Ct. at 2180. The Court focuses on analysis of the statutory changes to § 924 made after *Castillo* and concludes that Congress's primary purpose in enacting the amendments was to convert the mandatory sentences into minimum mandatory sentences and to reinforce that mere possession of a firearm was enough to trigger the statute. It concludes that statutory changes do not impact the precedent of *Castillo*, and the machine gun enhancement still has to be proven beyond a reasonable doubt. *Id.*

Thus, *O'Brien* does not overrule *Harris*, nor does it undermine our previous holdings that the Michigan sentencing scheme does not run afoul of *Apprendi/Blakely.*

B.

Deatrick also argues that *Cunningham v. California*, 549 U.S. 270 (2007), requires *Montes* and *Chontos* to be overturned. *Cunningham* considered the California sentencing scheme in light of *Apprendi/Blakely*. For each offense, the California legislature set a low, middle, and upper term

sentence. *Cunningham*, 549 U.S. at 277. A defendant will be sentenced to the middle term sentence unless the judge finds specific facts that warrant an enhancement to the upper term. *Id.*. After surveying the *Apprendi/Blakely* line of cases, the Court concluded that "[i]n accord with *Blakely*, therefore, the middle term prescribed in California's statutes . . . is the relevant statutory maximum." *Id.* at 288. Therefore, the California procedure that allows the judge, rather than the jury, to find facts that enhance the sentence to the upper term violates the *Apprendi/Blakely* rule. *Id.* at 293.

*Cunningham* is not applicable to the Michigan sentencing scheme. The judicial fact-finding involved in *Cunningham* implicated the maximum sentence a defendant would serve, as in *Apprendi* and *Blakely*. As discussed above, *Harris* draws a clear distinction between maximum sentences and minimum mandatory sentences when analyzing the constitutionality of judicial fact-finding. The Michigan sentencing scheme involves judicial fact-finding with regard to only the minimum sentence, and so *Cunningham* is not applicable.

## III.

For the foregoing reasons, we AFFIRM the district court's denial of the petition for a writ of habeas corpus.