Filed 9/25/23  In re Cabrera CA3
Opinion on remand from Supreme Court

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| In re MIGUEL ANGEL CABRERA<br><br>on Habeas Corpus. | C091962<br><br>(Super. Ct. Nos. MCYKCRBF20076242, SCCRHCCR20189121)<br><br>OPINION ON REMAND |

Petitioner Miguel Angel Cabrera sought relief in habeas corpus for ineffective assistance of appellate counsel in failing to challenge a sentence enhancement under *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*).  The trial court had imposed a five-year enhancement under Penal Code section 667, subdivision (a)(1), based on the court's determination that Cabrera caused great bodily injury to the victim (Pen. Code, § 1192.7, subd. (c)(8); statutory section citations that follow are found in the Penal Code unless otherwise stated).  However, the jury deadlocked on special allegations that petitioner personally inflicted great bodily injury (§ 12022.7) and the trial court declared

1

a mistrial on those allegations.  Petitioner contended the sentencing enhancement violated the rule of *Apprendi* that a finding that increases punishment must be made by a jury. Therefore, petitioner maintained appellate counsel rendered ineffective assistance by failing to assign error on appeal on that basis.  (*Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*).)  We denied the petition.  (*In re Cabrera* (Aug. 25, 2021, C091962) [nonpub. opn.].)

The California Supreme Court granted review and reversed in *In re Cabrera* (2023) 14 Cal.5th 476 (*Cabrera*).  The court remanded the case for this court to reconsider petitioner's ineffective assistance of counsel claim in light of *Cabrera*. Having done so, we again conclude that the petition should be denied.

## FACTS AND HISTORY OF THE PROCEEDINGS

In *Cabrera,* the Supreme Court stated the relevant background as follows:

"Cabrera met Curtis Barnum in July 2006 at a bar in Siskiyou County.  Barnum invited Cabrera and a few of Cabrera's friends back to his home.  After they arrived at the house, Cabrera and Barnum got into an argument, which culminated in Cabrera suddenly punching Barnum in the face while they were standing in the driveway next to Barnum's truck.  According to the testimony of a witness present at the time, this punch knocked Barnum 'out cold on contact.'  Barnum collapsed and struck his head on the cement.  He was unconscious for several minutes in a pool of blood about twice the size of his head. Cabrera fled, and Barnum was taken to the hospital.  He received three stitches to close a one-inch laceration in the back of his head, which was necessary to control the bleeding. His treating physician testified that the wound was larger than the length of the laceration because of swelling around it, and that Barnum's skull was 'easily visible within the wound.'  Barnum testified that he had experienced some dizzy spells since the injury.  He said he had a 'little bit' of problems with headaches and they were 'not bad.'

"Cabrera was charged with assault by means of force likely to produce great

2

bodily injury, battery with serious bodily injury, assault with a deadly weapon, and participating in a street gang. [Citation.] He was also charged with gang allegations on several of the counts, allegations that he had personally inflicted great bodily injury, and having four prior convictions constituting serious felonies and strikes. [Citation.]"

"The jury was instructed that serious bodily injury means 'a serious impairment of physical condition,' which 'may include but is no [*sic*] limited to loss of consciousness, concussion, bone fracture, protracted loss or impairment of function of any bodily member or organ, a wound requiring extensive suturing and serious disfigurement.' The instructions specifically stated that '[l]oss of consciousness and a wound or cut requiring extensive suturing is a serious bodily injury.' The jury was also instructed that great bodily injury means 'significant or substantial physical injury' and that it is 'an injury that is greater than minor or moderate harm.'

"During its deliberations, the jury asked the court for 'specific definitions of mild and moderate injury' as those terms were used in the instructions on great bodily injury. The court informed the jury that 'there really are no specific definitions,' and it directed the jurors to the definition in the instruction it had given. The court declined 'to try to fine-tune that or define it any further,' explaining that 'we know of no legal definition' other than the instruction.

"Two days later, the jury sent another question to the court. The jurors explained that they were 'having problems reconciling the differences between great bodily injury and serious bodily injury.' They asked, 'If we agree the injury was severe, are we bound to agree that great bodily injury occurred?' The court referred the jurors back to the instructions defining great bodily injury and serious bodily injury, noting that 'serious bodily injury is not defined exactly the same as great bodily injury' but 'they are not necessarily mutually exclusive.'

"Later that day, the jury indicated that it had reached verdicts on the first assault charge, the battery charge, and the charge of participating in a street gang. It found

3

Cabrera guilty of each of those counts, but it found the gang allegations not true. It found true the allegations of four prior serious felonies. The jury deadlocked on the charge of assault with a deadly weapon and on the allegations that Cabrera had inflicted great bodily injury. The court declared a mistrial on the deadlocked counts.

"Cabrera's sentence depended in part on whether his convictions counted as 'serious felon[ies]'; if so, because of his prior serious felonies, he faced a five-year sentencing enhancement. (Pen. Code, § 667, subd. (a)(1).) The Penal Code defines serious felonies to include 'any felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice.' (*Id.*, § 1192.7, subd. (c)(8).) The relevant provisions of the Penal Code are unchanged from the time of Cabrera's sentencing.

"At sentencing, the prosecutor argued that Cabrera's charges were serious felonies because '[t]he evidence was that when the defendant swung, [the victim] went down, his knees buckled, his head . . . hit the cement and resulted in a concussion.' The prosecutor said this showed that 'in fact, the defendant inflicted great bodily injury.' The prosecutor also argued that great bodily injury could be inferred from the jury's finding of serious bodily injury, citing *People v. Burroughs* (1984) 35 Cal.3d 824 [] (*Burroughs*) and *People v. Hawkins* (1993) 15 Cal.App.4th 1373 [] (*Hawkins*) for the proposition that 'battery with serious bodily injury is great bodily injury.' Defense counsel responded that Cabrera was 'entitled to a jury finding on anything that would have had the effect of making his punishment more severe.' He argued that a finding by the court that Cabrera inflicted great bodily injury would 'invade[ ] the province of the jury.'

"The court concluded that Cabrera's charges were serious felonies because 'there is great bodily injury,' citing *Burroughs* and *Hawkins*, and imposed a five-year enhancement.

"On appeal, Cabrera's conviction for participating in a street gang was reversed, but he did not challenge the sentencing court's finding of great bodily injury. [Citation.]

4

Cabrera later sought a writ of habeas corpus in the Court of Appeal, arguing that his appellate counsel's failure to challenge the great bodily injury finding constituted ineffective assistance. [This court] denied his petition in an unpublished opinion. [The California Supreme Court] granted review to consider whether the sentencing court's finding of great bodily injury violated Cabrera's Sixth and Fourteenth Amendment rights under *Apprendi*." (*Cabrera, supra*, 14 Cal.5th at pp. 480-482.)

The California Supreme Court held "that [the trial] court's finding did violate *Apprendi*" and reversed. (*Cabrera, supra,* 14 Cal.5th at p. 480.) Noting that this court in denying Cabrera's habeas petition "did not reach a conclusion as to whether counsel's performance was deficient, instead holding that Cabrera 'failed to show prejudice in the form of a reasonable probability of a different outcome had appellate counsel raised an *Apprendi* issue,' " and the opinion in *Cabrera* "bears directly on that holding," the high court "remand[ed] this case for reconsideration of Cabrera's ineffective assistance claim." (*Cabrera, supra,* 14 Cal.5th at p. 492.)

The parties submitted supplemental briefs pursuant to California Rules of Court, rules 8.200(b), 8.528(f).

DISCUSSION

I

*Standard of Review*

" ' "A criminal defendant is guaranteed the right to the assistance of counsel by both the state and federal Constitutions. [Citations] 'Construed in light of its purpose, the right entitles the defendant not to some bare assistance but rather to *effective* assistance.' [Citation, italics in original.] In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citations.] Second, he must also show prejudice

5

flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" [Citation.] The United States Supreme Court recently explained that this second prong of the *Strickland* test is not solely one of outcome determination. Instead, the question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." [Citation.] [¶] Similar concepts have been used to measure the performance of appellate counsel. [Citations.]' " (*In re Richardson* (2011) 196 Cal.App.4th 647, 657 (*Richardson*); *In re Harris* (1993) 5 Cal.4th 813, 832-833, disapproved on another point in *Shalabi v. City of Fontana* (2021) 11 Cal.5th 842, 855; *Strickland, supra*, 466 U.S. at pp. 687-688.)

"Appellate counsel does not provide deficient, i.e., objectively unreasonable, assistance by failing to raise every nonfrivolous claim on appeal. [Citation.] As the high court has stated: 'Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.' [Citation.] However, where appellate counsel fails to raise 'a significant and obvious issue,' the failure will generally be considered deficient performance under [*Strickland*] if the missed issue is 'clearly stronger than those presented.' [Citations.] And where 'an issue which was not raised may have resulted in a reversal of the conviction, or an order for a new trial, the failure [is] prejudicial.' [Citation.]" (*In re Hampton* (2020) 48 Cal.App.5th 463, 477-478; see also *In re Friend* (2022) 76 Cal.App.5th 623, 636 (*Friend*) [appellate counsel " 'performs *properly* and *competently* when he or she exercises discretion and presents *only* the strongest claims instead of every conceivable claim' "].)

The *Apprendi* issue has become more significant, obvious and stronger as a result of the California Supreme Court's opinion in *Cabrera*. However, that opinion succeeded

6

by many years appellate counsel's omission of the issue from Cabrera's initial appeal. As a result, we cannot rely on the California Supreme Court's *Cabrera* opinion issued in 2023 to evaluate appellate counsel's performance in 2008.

"[W]hen reviewing a claim of ineffective assistance, we 'must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance.' [Citations.] 'Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance . . . , and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective *at the time*.' [Citation.]" (*Friend, supra,* 76 Cal.App.5th at p. 635, italics added, quoting *Strickland, supra*, 466 U.S. at p. 689; see also *People v. Harris* (7th Cir. 2021) 13 F.4th 623, 629 ["To show deficient performance, it is not enough to rely on hindsight about whether a proposed challenge would have succeeded. [Citation.] Rather, the reasonableness of counsel's performance must be assessed 'in the context of the law' at the time. [Citation.]"].)

A.    Change in Law

In 2008, there was no controlling case law as there is now holding that an *Apprendi* violation occurs when a sentencing court imposes a sentence enhancement for "great bodily injury" where, as here, the jury hung on an allegation that the defendant inflicted "great bodily injury" (§ 12022.7, subd. (a)), but found that defendant committed battery with "serious bodily injury" (§ 243, subd. (d)). Rather, the prevailing law, as expressed in our decision in *People v. Arnett* (2006) 139 Cal.App.4th 1609 (*Arnett*), based on cases going back to 1979, was: "Numerous courts have recognized that '[t]he

7

terms "serious bodily injury" and "great bodily injury" have substantially the same meaning.' " (*Id.* at p. 1613, citing, inter alia, *Hawkins, supra,* 15 Cal.App.4th at p. 1375 ["[t]he terms 'serious bodily injury' and 'great bodily injury' have substantially the same meaning . . . "]; *Burroughs, supra,* 35 Cal.3d at p. 831 ["we acknowledge that ' "[s]erious bodily injury" and "great bodily injury" are essentially equivalent elements' "], overruled on another ground in *People v. Blakeley* (2000) 23 Cal.4th 82, 89-91.)

However, in *People v. Taylor* (2004) 118 Cal.App.4th 11 (*Taylor*), the appellate court held that, where the jury found not true section 12022.7 allegations charging that the defendant personally inflicted great bodily injury, the trial court erred in treating the jury's finding of serious bodily injury as the equivalent of a finding of great bodily injury, and thereby violated the defendant's right to a jury trial. (*Taylor, supra*, at pp. 25 ["In these circumstances, the jury's finding of serious bodily injury cannot be deemed equivalent to a finding of great bodily injury"].) Subsequent cases, including *Arnett*, viewed *Taylor* as limited to circumstances where the jury made a negative finding on a great bodily injury enhancement. (*Arnett, supra,* 139 Cal.App.4th at p. 1615; see also *People v. Johnson* (2016) 244 Cal.App.4th 384, 395 ["The present case is more similar to *Arnett* than to *Taylor*," because "the jury did *not* find 'not true' the allegations defendant personally inflicted great bodily injury, but rather made no findings in that regard"].)

Thus, prior to *Cabrera*, there was no controlling case law and the law was unsettled concerning the equivalence of findings of "great bodily injury" and "serious bodily injury" for purposes of imposing a sentence enhancement where the jury had not made a finding regarding the former but had done so regarding the latter. Under such circumstances, we are compelled to conclude that Cabrera's appellate counsel did not render constitutionally ineffective assistance by failing to raise an *Apprendi* issue in Cabrera's initial appeal. (*People v. Upsher* (2007) 155 Cal.App.4th 1311, 1328-1329.)

Moreover, the court in *Cabrera* expressly disapproved of two cases holding that, (1) since "great bodily injury" and "serious bodily injury" are essentially equivalent

terms, therefore a "serious bodily injury" under section 243 constitutes a "great bodily injury" as a matter of law under section 12022.7 (*People v. Villareal* (1985) 173 Cal.App.3d 1136, 1141), and (2) "the element of 'serious bodily injury,' as required for felony battery, is essentially equivalent to or synonymous with 'great bodily injury' for the purpose of a 'serious felony' sentence enhancement pursuant to Penal Code sections 667, subdivisions (a) and (d), and 1192.7, subdivision (c)(8)" (*People v. Moore* (1992) 10 Cal.App.4th 1868, 1871; *Cabrera, supra,* 14 Cal.5th at p. 492.)

In addition, the Supreme Court in *Cabrera* rejected the distinction *Johnson* and *Arnett* drew between the current case and *Taylor* "on the ground that the jury there made a 'determination contrary to a finding of' great bodily injury, while '[t]here was no such determination in this case.' " (*Cabrera, supra*, 14 Cal.5th at p. 489.) Again, the court acknowledged that cases "considering this issue since *Taylor* have done the same." (*Cabrera, supra,* at p. 489.) The court said, "this purported distinction gets the *Apprendi* inquiry backwards." (*Id.* at pp. 489-490.) *Apprendi* requires an affirmative finding of "great bodily injury" by the jury. (*Cabrera, supra,* at p. 490.)

We confront here circumstances that are similar to those this court faced in *Richardson, supra,* 196 Cal.App.4th 647. *Richardson* involved *People v. Trujillo* (2006) 40 Cal.4th 165, in which the California Supreme Court overruled two appellate court opinions holding that a probation report was admissible to prove a strike. (*Richardson, supra,* 196 Cal.App.4th at p. 654.) The defendant's 2004 appeal of his conviction, which we affirmed in 2006, did not challenge admission of his probation report for that purpose. (*Id.* at pp. 653-654.) Shortly after our affirmance, the Supreme Court issued *Trujillo.* We held that "appellate counsel's performance was not deficient," because "counsel could not have reasonably known then that the Supreme Court was about to change the law," and "thus was not expected to argue against the prevailing law." (*Id.* at p. 661.)

*Richardson* reflects the well-established principle that failure to anticipate changes in case law is not generally considered ineffective assistance of counsel. (*People v.*

9

*Harris* (2013) 57 Cal.4th 804, 840 ["defendant's failure to object is excusable because defense counsel could not reasonably have been expected to anticipate this change in the law"]; *United States v. Juliano* (9th Cir. 2021) 12 F.4th 937, 940 ["Given that the reasonableness of counsel's conduct must be evaluated based on the time it occurred, courts have articulated a rule that ineffective assistance of counsel claims generally cannot be predicated on counsel's failure to anticipate changes in the law"]; *Thompson v. Warden, Belmont Correctional Institution* (6th Cir. 2010) 598 F.3d 281, 288 ["appellate counsel is not ineffective for failing to predict the development of the law"]; *Green v. Johnson* (5th Cir. 1997) 116 F.3d 1115, 1125 ["there is no general duty on the part of defense counsel to anticipate changes in the law"]; *Kornahrens v. Evatt* (4th Cir. 1995) 66 F.3d 1350, 1360 ["the case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law"]; *Alcorn v. Smith* (6th Cir. 1986) 781 F.2d 58, 62 ["nonegregious errors such as failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel"].)

B.      Former Counsel's Declaration

Cabrera highlights in his supplemental brief that we referred in our prior opinion to former appellate counsel's declaration regarding the omission of the *Apprendi* issue in Cabrera's initial appeal as "tantamount to an admission of deficient performance." (*People v. Cabrera, supra,* C091962.)  The People, however, in their supplemental brief characterize this reference as a "suggestion," and disagree with it.  They argue that, "[c]ounsel's declaration is insufficient to support the conclusion that he acted in an objectively unreasonable [*sic*] manner by failing to challenge, on *Apprendi* grounds, the trial court's imposition of a prior serious felony enhancement."  Upon reconsideration, we agree with the People.

In his brief declaration, Cabrera's former counsel stated:  "In my handling of the appeal in No. C058828, I identified as a potential issue the question whether, in the

10

absence of a jury finding, the sentencing court had the authority to find that Cabrera personally inflicted GBI [great bodily injury] and on that basis to impose the serious felony enhancements.  However, I cannot recall the reason why I did not argue on appeal that the court's finding and consequent imposition of the serious felony enhancements violated Cabrera's rights to trial by jury.  It appears to me now that this was an arguable issue at the time of Cabrera's initial appeal to preserve it for review by a federal petition for writ of habeas corpus.  I am unable at this point to offer a reasonable basis for my failure to challenge the sentencing court's imposition of the five-year enhancements as a product of the court's violation of Cabrera's state and federal rights to trial by jury on the GBI question."  (*People v. Cabrera, supra,* C091962.)

In *Friend*, the court held that a "brief one-page" declaration from counsel who represented the defendant in his direct appeal and first habeas petition, stating " 'there was no strategic reason' " not to include *Batson/Wheeler* claims (i.e., that the prosecutor used peremptory strikes to exclude minorities and women from juries) raised in the second habeas petition, lacked "factual specificity" and was "highly problematic to establishing a claim of ineffective assistance."  (*Friend, supra,* 76 Cal.App.5th at pp. 638, 640.)  The court in *Friend* relied on *In re Reno* (2012) 55 Cal.4th 428 (*Reno*), superseded by statute on other grounds *In re Friend* (2021) 11 Cal.5th 720, 745.  (*Friend, supra,* at pp. 639-640.)  In *Reno*, the California Supreme Court concluded that an attorney's declaration that "on reflection, [an omitted claim was] potentially meritorious and he had no tactical reason for failing to raise it in" a prior habeas petition was "woefully lacking in detail," and does not provide "a basis to conclude that competent counsel should have raised [the claim] or that 'the issue is one which would have entitled the petitioner to relief had it been raised and adequately presented in the initial petition, and that counsel's failure to do so reflects a standard of representation falling below that to be expected from an attorney engaged in the representation of criminal defendants.' "  (*Reno, supra,* at p. 503.)

11

The declaration of counsel Cabrera submitted, if anything, is less compelling than the declarations in *Friend* and *Reno*. Counsel does not actually state that there was no "strategic" or "tactical" reason for omitting the issue on appeal. (Compare *In re Hernandez* (2006) 143 Cal.App.4th 459, 469 [declaration of trial counsel stating, "I had no tactical reason" for not objecting to inadmissible evidence (italics omitted)]; see also *People v. Burnett* (1999) 71 Cal.App.4th 151, 181 ["in his declaration submitted with appellant's petition for writ of habeas corpus, trial counsel states that he had no tactical reason for failing to make additional objections" to submission of the case to the jury based on a single incident].)

Rather, Cabrera's former appellate counsel states that he identified the issue of the trial court's imposition of a "GBI" enhancement without a jury finding, which now "appears" to be "arguable," but he "cannot recall" why he did not raise it on appeal, and cannot now think of a "reasonable basis" for failing to do so. Counsel's declaration essentially conveys that he does not know or remember why he failed to raise a potentially meritorious issue on appeal, which is clearly insufficient to establish ineffective assistance. (*Friend, supra,* 76 Cal.App.5th at p. 640.)

Cabrera separately argues former counsel was deficient for failing to "federalize" the *Apprendi* issue by appealing it to state court to preserve the issue for a federal habeas petition. Cabrera refers to the statement in counsel's declaration that "[i]t appears to me now that this was an arguable issue at the time of Cabrera's initial appeal to preserve it for review by a federal petition for writ of habeas corpus." Beyond the vague and tentative language of this statement, it "potentially invites the 'distorting effects of hindsight' that are to be avoided" when considering an ineffective assistance claim. (*Alvarez v. Warden* (E.D. Cal. April 3, 2019) 2019 LEXIS 57594.)

We conclude that Cabrera has failed to show that former appellate counsel rendered ineffective assistance of counsel. Because counsel's performance was not

deficient, we need not discuss Cabrera's claim of prejudice.  (*Richardson, supra*, 196 Cal.App.4th at p. 662.)

## DISPOSITION

The order to show cause is discharged and the petition for writ of habeas corpus is denied.

 

_____

HULL, J.

We concur:

_____

EARL, P. J.

_____

MAURO, J.